United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

K.R.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 26-cv-02432-LB

**ORDER REMANDING CASE FOR FURTHER PROCEEDINGS**

Re: ECF Nos. 12, 18

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act.[1] He contends that evidence he submitted to the Appeals Council undermines the decision and that the administrative law judge (ALJ) made a series of errors. He asks the court to remand for an award of benefits or, alternatively, for further proceedings.[2] The Commissioner agrees that the

---

[1] Pl.'s Br. – ECF No. 12 at 1, 4. Citations to the briefs are to the ECF-generated page numbers at the top of the documents. Citations to the Administrative Record (AR), which is at ECF No. 9, are to the record's own page numbers.

[2] Pl.'s Br. – ECF No. 12 at 8–28.

case must be remanded and asks only that the remand be for further proceedings.[3] The one disputed issue is the remedy.

The court remands for further proceedings. A court may award benefits only on a fully developed record that leaves no essential factual issue unresolved. This record is not fully developed. No ALJ has weighed the evidence that the plaintiff submitted to the Appeals Council, including the evidence about whether his work as a caregiver since 2023 was substantial gainful activity. The new treatment notes refer to psychiatric care and to imaging that the record does not otherwise document. And the evidence that was before the ALJ, even if credited, does not compel a finding of disability.

## STATEMENT

### 1. The Administrative Proceedings

The plaintiff applied for supplemental security income in April 2021, when he was fifty-eight. He alleged that he had been disabled since November 30, 2019, by asthma, rheumatoid arthritis, sciatica, and migraine headaches.[4] He has at least a high-school education and no past relevant work.[5] The agency denied the claim initially and on reconsideration.[6] In April 2022, after a hearing, an ALJ found that the plaintiff's asthma was a severe impairment but that he could do medium work with some limitations and was not disabled.[7] A year later, the Appeals Council remanded the case and directed the ALJ to reconsider the medical opinions, the prior administrative medical findings, and the plaintiff's residual functional capacity, and to obtain supplemental vocational evidence.[8]

The ALJ convened a second hearing in September 2023. The plaintiff, who no longer had a representative, said that he needed one, and the ALJ postponed the hearing so that he could look

---

[3] Comm'r's Br. – ECF No. 18 at 1–2.

[4] AR 47, 55–57.

[5] AR 56.

[6] AR 366.

[7] AR 366–72.

[8] AR 376–81.



United States District Court
Northern District of California

United States District Court
Northern District of California

for one. Concerned that the record might not reflect all of the plaintiff's conditions, the ALJ also ordered physical and psychological consultative examinations.[9] The plaintiff did not attend them — he later testified that he did not receive the notices — and he appeared at the next hearing, in July 2024, still without a representative.[10]

At the July 2024 hearing, the plaintiff testified that he had begun working as an in-home caregiver for a friend, doing laundry, washing dishes, and taking out the trash. He said that (1) he was limited to "lightweight" work, (2) he was depressed, could not function in crowds, and was afraid to go out, (3) he took Trazodone for nightmares and Prazosin for post-traumatic stress disorder (PTSD), and (4) pain in his groin and leg made it hard to climb stairs.[11] After the hearing, he attended consultative examinations with Dr. Han, a physician, and Dr. Elisberg, a psychologist.[12]

**2. The ALJ's October 2024 Decision**

The ALJ denied the claim in October 2024.[13] At step one of the five-step sequential evaluation, he found that the plaintiff had engaged in substantial gainful activity from April through June 2023 and since January 2024. The 2023 finding rested on earnings records. No earnings were posted for 2024, but the plaintiff had testified that he was still working as a caregiver and did not know his hours or his pay, and the ALJ found that he "failed to establish that the 2024 work activity was not performed at the substantial gainful activity level."[14] Because there was still a continuous twelve-month period without substantial gainful activity, the ALJ went on to step two.[15]

---

[9] AR 286–98.

[10] AR 308–11.

[11] AR 315, 322–23, 325–26, 330.

[12] AR 52–53, 827–56.

[13] AR 47–57.

[14] AR 49–50.

[15] AR 50.

At step two, the ALJ found that the plaintiff had no severe impairment.[16] He was not persuaded by the opinions of the two physicians who examined the plaintiff: Dr. Glantz, who concluded in 2021 that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and Dr. Han, who concluded in 2024 that he could lift up to 100 pounds and could stand or walk for six hours in a workday. He was persuaded instead by the state-agency consultants, who found no severe physical impairment in 2021.[17] Dr. Elisberg diagnosed PTSD and depressive and anxiety disorders, among others. She assessed marked limitations in following simple instructions and in interacting with others, and an extreme limitation in adapting to the stresses of a work setting. The ALJ found her opinion unpersuasive because the treatment records showed no mental-health complaints, diagnoses, or treatment, and because the plaintiff had sustained work as a caregiver since early 2023.[18]

In the alternative, the ALJ (1) found that asthma was a severe impairment, (2) the plaintiff could work at any exertional level if he avoided concentrated exposure to fumes, dust, odors, gases, and poor ventilation, and (3) he could do jobs that exist in significant numbers in the national economy.[19]

### 3. The Evidence Submitted to the Appeals Council

The plaintiff asked the Appeals Council to review the decision. He later retained counsel and, while the request was pending, submitted a statement of his own, a work-activity questionnaire, and medical records.[20]

In his statement, the plaintiff said that he does "lightweight chores" for his friend — cooking, light cleaning, and dishes — and that when an asthma attack, back pain, or his emotions keep him from working, he calls her and "she is fine if I don't show up." He said that he has not had mental-

---

[16] *Id.*

[17] AR 51–52.

[18] AR 52–54.

[19] AR 54–57.

[20] AR 7–10, 19–20, 65–257; Pl.'s Br. – ECF No. 12 at 4–5.

United States District Court
Northern District of California

health treatment because (1) the one referral he received did not take his insurance, (2) he cannot be around crowds, and (3) riding the bus is hard for him. He has felt nervous around people since he was carjacked.[21]

The questionnaire is an agency form about the plaintiff's work for his friend. It states that he has worked as an in-home care provider since January 2023, for about twenty-five hours a week at $20 an hour. It states that he completes the usual duties of the job but does not regularly report as scheduled, takes longer than others in similar positions, and receives special assistance: fewer and easier duties, irregular hours, more breaks, frequent absences, extra help or supervision, and special equipment. The friend did not sign the form. Someone else signed for her, with a note that it was "transcribed by phone."[22]

The medical records include notes from six primary-care visits at LifeLong Medical Care between April 2023 and February 2025. The rest are Kaiser records, many of them duplicates of emergency-department records that the ALJ had.[23] The notes from the first visit record that the plaintiff had been carjacked some months earlier and was seeing a psychiatrist, Dr. Franklin. the plaintiff was tearful when he talked about the carjacking. His diagnoses included PTSD, moderate persistent asthma, chronic shoulder pain, and kidney stones.[24] In July 2023, his doctor prescribed Trazodone and Prazosin for PTSD. A November 2023 note states that he had stopped seeing the psychiatrist because of insurance problems.[25] The 2023 notes also describe urinary and kidney-stone pain that was managed with Flomax.[26]

In May and June 2024, the plaintiff reported pain in his right hip and groin. Ibuprofen gave "some relief" at first. A month later it was not helping, and the doctor recommended a higher

[21] AR 9.

[22] AR 7–8.

[23] AR 65–257; Comm'r's Br. – ECF No. 18 at 3.

[24] AR 99–102.

[25] AR 85, 93–95.

[26] AR 86, 93, 95–96.

dose.[27] In February 2025, the plaintiff reported groin pain and acute low-back pain. The doctor suspected a tear in the hip joint, ordered an MRI and other imaging, referred him to physical therapy, and prescribed a muscle relaxant, lidocaine patches, and more ibuprofen.[28]

The Appeals Council denied review in January 2026. It found that the new evidence did "not show a reasonable probability that it would change the outcome of the decision."[29] The plaintiff then filed this action, and the parties consented to magistrate-judge jurisdiction.[30]

## ANALYSIS

The plaintiff contends that (1) the evidence he submitted to the Appeals Council warrants remand, (2) the ALJ did not obtain a valid waiver of his right to representation or adequately develop the record, and (3) the ALJ erred in relying on his work activity, in finding no severe impairment, and in evaluating his mental functioning, his symptom testimony, the medical opinions, and his residual functional capacity.[31] The Commissioner agrees that the case must be remanded and does not respond to these contentions.[32] Because the parties agree that the decision cannot stand, the court reverses it without deciding those contentions. The remaining question is whether to remand for further proceedings or for an award of benefits.

Sentence four of 42 U.S.C. § 405(g) allows a court to reverse the Commissioner's decision "with or without remanding the cause for a rehearing." When an ALJ errs, though, a court ordinarily remands to the agency for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). A court may instead remand for an award of benefits if three conditions are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record is fully developed, and

[27] AR 78–79, 81, 83.

[28] AR 71–72.

[29] AR 1–2.

[30] Consents – ECF Nos. 5, 8.

[31] Pl.'s Br. – ECF No. 12 at 8–28.

[32] Comm'r's Br. – ECF No. 18 at 1–5.

United States District Court
Northern District of California

further proceedings would serve no useful purpose; and (3) the rejected evidence, if credited as true, would require the ALJ to find the claimant disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).[33] The second condition is not met when the evidence conflicts and essential factual issues remain unresolved. *Treichler*, 775 F.3d at 1101. And even when all three conditions are met, a court may remand for further proceedings if the record as a whole creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

The court assumes that the first condition is met. The second is not.

**1. The New Evidence Raises Factual Issues That an ALJ Must Resolve**

The plaintiff's first argument is that the evidence he submitted to the Appeals Council undermines the ALJ's decision and that remand is needed "to give meaningful consideration" to it.[34] The Commissioner agrees that an ALJ should consider it.[35] That evidence is in the administrative record, and the court considers it in reviewing the Commissioner's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). But no ALJ has evaluated it, and the plaintiff agrees that the court cannot make its own findings about it.[36] Considering that evidence in reviewing the ALJ's decision is one thing. Awarding benefits on it is another. When evidence that the ALJ never saw raises questions of fact, the appropriate course is to remand so that the ALJ can answer them. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). The new evidence here bears on two contested issues.

The first issue is the plaintiff's work. A claimant who is engaged in substantial gainful activity is not disabled, whatever his medical condition. 20 C.F.R. § 416.920(a)(4)(i), (b). The ALJ found that the plaintiff engaged in substantial gainful activity from April through June 2023 and since January 2024, and he relied on the same work to discount the plaintiff's symptom testimony and

---

[33] The Commissioner objects to the credit-as-true rule to preserve the objection. Comm'r's Br. – ECF No. 18 at 2 n.1. The rule is the law of the circuit, and the court applies it.

[34] Pl.'s Br. – ECF No. 12 at 8–10.

[35] Comm'r's Br. – ECF No. 18 at 2–3.

[36] Reply – ECF No. 21 at 4.

United States District Court
Northern District of California

Dr. Elisberg's opinion.[37] The plaintiff contends that the work was not substantial gainful activity because he did it under special conditions and because his pay was in part a subsidy. *See id.* §§ 416.973(c), 416.974(a)(2).[38] His proof is his own statement and the questionnaire. The Commissioner questions the questionnaire because the friend neither completed nor signed it.[39]

Whether the plaintiff worked under special conditions, what his work was worth, and what he earned after 2023 are questions of fact. The ALJ made no findings on the first two. On the third, the earnings records in the file stop at 2023. The plaintiff faults the ALJ for deciding the issue without developing "more information about [his] work activity."[40] Until an ALJ answers these questions, the court cannot determine that the plaintiff was disabled during the months that he worked.

The second issue is the medical evidence. The LifeLong notes help the plaintiff in some ways. They record a PTSD diagnosis, psychiatric medication, and a psychiatrist's care, and so undercut the ALJ's premise that the treatment records showed no mental-health complaints, diagnoses, or treatment. They also record continuing complaints of hip, groin, and back pain.[41] The Commissioner reads the same notes differently: the mental-health complaints were confined to 2023 and concerned sleep, which raises a question under the twelve-month duration requirement, *id.* § 416.909, and the pain was treated conservatively, with some relief. The Commissioner also points to a June 2024 note that the plaintiff would have trouble resting his groin because he "works on cars."[42] The reply does not answer these points. The notes can be read either way, and choosing between the readings is the ALJ's job. *Treichler*, 775 F.3d at 1098.

The new evidence also exposes gaps. The notes refer to a psychiatrist, but the record has no psychiatric records, and the plaintiff's own statement says that he has not had mental-health

---

[37] AR 49–50, 53–54, 56.

[38] Pl.'s Br. – ECF No. 12 at 11–13.

[39] Comm'r's Br. – ECF No. 18 at 3.

[40] AR 49–50; Pl.'s Br. – ECF No. 12 at 11.

[41] AR 54, 71–72, 78–79, 81, 85, 93–95, 99–102.

[42] Comm'r's Br. – ECF No. 18 at 3–5 (citing AR 71–73, 78–79, 81, 85–86, 93, 96).

United States District Court
Northern District of California

treatment.[43] The notes show that an MRI, other imaging, and physical therapy were ordered in February 2025, but the record does not show the results.[44] The plaintiff argues that the ALJ failed to develop the record on his treatment and his work and so left "an underdeveloped record."[45] He cannot both call the record underdeveloped and ask the court to treat it as fully developed. The remedy for an undeveloped record is to develop it.

**2. The Evidence Before the ALJ Does Not Compel a Finding of Disability**

In his reply, the plaintiff argues that the court can award benefits on the evidence that was before the ALJ.[46] He makes two points. Neither establishes disability.

First, the plaintiff contends that his testimony about his physical limits, if credited, restricts him to light or sedentary work, and that the Medical-Vocational Guidelines direct a finding of disability for a person of his age, education, and work history who is so restricted.[47] The testimony does not establish that contention. The plaintiff described his chores as "lightweight" and said that he lifts no more than a small basket of clothes and has trouble walking. But he also testified in 2022 that he could lift 30 to 40 pounds, though not for long.[48] And his testimony conflicts with other evidence: both physicians who examined him concluded that he could do at least medium work, and he has worked as a caregiver since 2023.[49] A conflict between a claimant's testimony and the medical evidence is for the ALJ to resolve. *Treichler*, 775 F.3d at 1105. *Ortiz v. Bisignano*, which the plaintiff cites, illustrates the point. There, on a complete record, a treating physician had limited the claimant to light work, and the Guidelines directed a finding of disability

---

[43] AR 9, 85, 95, 99; Comm'r's Br. – ECF No. 18 at 4.

[44] AR 72; Comm'r's Br. – ECF No. 18 at 4.

[45] Pl.'s Br. – ECF No. 12 at 11.

[46] Reply – ECF No. 21 at 4–7.

[47] *Id.* at 5 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, Rules 201.04, 202.04).

[48] *Id.* (citing AR 269–77, 314–15); AR 55, 369.

[49] AR 49–52.

United States District Court
Northern District of California

once that opinion was credited. 179 F.4th 691, 706 (9th Cir. 2026). No medical source has limited the plaintiff to light work.

Second, the plaintiff contends that Dr. Elisberg's opinion, if credited, rules out all work.[50] But Dr. Elisberg examined the plaintiff once, in September 2024, and she called her test results a "questionable representation" of his functioning because he was so distressed during the examination.[51] Even if credited, an opinion from that one examination leaves open when the plaintiff's limitations began and how long they lasted: he alleges disability since 2019, the first mental-health treatment in the record is in 2023, and he was working as a caregiver when Dr. Elisberg examined him. Those questions must be answered on a full record, including the mental-health treatment that the ALJ did not know about, before anyone can decide whether and when the plaintiff became disabled.

**3. The Agency's Handling of the Claim Does Not Change the Remedy**

The plaintiff argues that the agency has had its chances. The ALJ, he says, could have developed the record or given him time to find a representative, and the Appeals Council could have remanded the case. Another remand, he argues, would create an unfair "heads we win; tails, let's play again" system and would serve no useful purpose.[52]

An award of benefits is not a penalty for agency error. A claimant is entitled to benefits only if he "is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *accord Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). The cases that the plaintiff cites are consistent with that rule. They awarded benefits because the records were complete and established disability once the rejected evidence was credited. *Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir. 2004); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). This record is neither complete nor one-sided.

---

[50] Reply – ECF No. 21 at 5–7.

[51] AR 53; Reply – ECF No. 21 at 6 (quoting AR 845).

[52] Reply – ECF No. 21 at 1–2, 4 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

Further proceedings will also serve a purpose that the earlier ones could not. The plaintiff now has counsel, who has gathered the evidence that the ALJ lacked. The claim has been pending since 2021, and the agency must act promptly on remand.

**4. The Scope of the Remand**

The remand is on an open record. *See Brown-Hunter*, 806 F.3d at 495–96. The ALJ must give (1) the plaintiff the opportunity for a new hearing, (2) consider the evidence that he submitted to the Appeals Council, (3) develop the record as needed on his work activity and his treatment, including his psychiatric treatment and the imaging ordered in 2025, and (4) decide the claim anew at each step of the sequential evaluation. Because the ALJ will decide the claim on a fuller record, the court does not reach the plaintiff's other assignments of error. He may raise them on remand.

**CONCLUSION**

The court grants the plaintiff's motion in part and grants the Commissioner's request for a remand for further proceedings. The court reverses the Commissioner's final decision and remands the case under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order. The court denies the plaintiff's request for a remand for an award of benefits. The court will enter a separate judgment.

This resolves ECF Nos. 12 and 18.

**IT IS SO ORDERED.**

Dated: November 11, 2026

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California